Excuse me, Your Honor. John Jacobson, appearing on behalf of the appellant. May it please the Court, counsel. Your Honor, it's unusual. I've got two issues in this case. The consistency issue and whether or not the 475 election was properly made. I'd like to first address the consistency issue, if I may. That is the issue and I addressed it in my brief, but I want to bring up the points that the Respondent raised in their brief to clarify the record. They first alleged that the interrogatories we sent and the subpoena we served was a fishing expedition. I submit there were substantial bases to submit the interrogatories and to issue a subpoena. We had previously checked with the service center in St. Louis and talked to the ASUA, and they had indicated that over 100 clients of this Borelli, who preferred false and fraudulent returns, were not asserted the negligence penalty. So a situation where we had a substantial basis to determine whether or not this institutional policy by the service did not issue a negligence penalty. The difficulty with that position is that every taxpayer situation, even though we may have the same accountant or attorney advisor, is different. And those individually assessed penalties don't really say anything, do they? Well, Your Honor, I agree that the service can check each individual and can treat them, they look at the facts and circumstances. But if the IRS determines that a policy matter, not to assert the penalty against a certain group of taxpayers, that's a different issue. Well, if the taxpayers are all identically situated as they were in the case you submitted, for example, that's one thing. But there's nothing to even suggest that these taxpayers were identically situated. In fact, given the particular nature of the penalty that was assessed in your case, there's every reason to believe they weren't similarly situated. Well, all the taxpayers we're talking about here were clients of Borelli. They were all in a similar situation. Well, that's like saying, you know, four people in this room have a red tie and therefore they're in similar situations. It's not the same beast. Well, with all due respect, Your Honor, what we have here, and that's why I was trying to establish, I may not be able to meet the burden of proof, but if I can prove that these taxpayers, forget about their adjustments, that institutionally the service decided we're not going to assert a penalty against these individuals because of this tax preparer who prepared false and fraudulent returns, that's not treating each, they're not making an independent evaluation whether there's a reasonable cause or no reasonable cause. They institutionally determined that we're not going to, that's what I have to prove, of course, that's why I'm asking for remand, that this was the policy of the service. It's similar to the Hartman case I forwarded to the Court, where the fraud on the Court and the Court said all the other taxpayers are going to be treated the same. The other issue raised by the government's brief was this was going to be a burdensome matter. All the information was in St. Louis. They've got a burden. They knew exactly how many individuals got audited because of this corrupt tax preparer. And they, so there's no burden at all on the government. The other issue that the government raises is we're going to get, asking for taxpayer disclosure. That's absolutely wrong. We're asking, we asked this, we want from the service, determine how many of these taxpayers, whether, first of all, their policy of the service not to assert the negligence penalty. Two, how many of these taxpayers, I presume it's all of them, except for our client, that didn't have the penalty asserted against them. I may be unable to prove that. If I can't, then so be the case. So in answer to Judge Reimer's question, to determine the negligence penalty is no question. It's a case-by-case situation. But if it's institutionally, the service has decided not to assert the penalty against a group of taxpayers, I have a right to prove that. And if I can, then I should prevail. I'm not going to cite the case aside in my brief. But example, if they have four or five taxpayers, same facts, no difference, but one taxpayer, they all report capital gains. The government allows all the capital gains, but says you can't take it. Why? They've got to come in and say, give a substantial reason why they're discriminating against a particular taxpayer. And the second issue I'd like to address, Your Honor, is the, which was addressed in the prior case, the ACAR case, whether a valid market-to-market election was made. I think the briefs cover that very well, but I'd like to just bring out two points. Although our election was made in the petition, I submit that the rev proc 99-17 is really, should not be given deference under the Chevron or Skidmore. The recent case forwarded by the government. Sotomayor Assuming it's not, just assume that it's, it basically says you've got to make an election that's clear. I mean, I, you know, I mean, you can't, no matter what you're talking about, you've got to make an election. And you can't just kind of do it in the air. So, so let's just suppose that the regulation is just simply a suggestion by the Commissioner about how to make an election sensibly. And that's all we take it for. Where does that get you? Well, I, I've got to agree with you on that, Your Honor. I'm just saying it's, it's just a, the rev proc is a position of the government. I mean, the government's not, I argue equity, the government's not hurt by this election. We just found about, found out about it during the preparation for trial and settlement. And although it didn't follow the rev proc and it didn't follow the procedures, the matter could have, it's hard to argue this, but the matter could have been hard in court. You know, the court could have heard it. And I don't think the government's damaged by this. And I, I submit the rev proc 99-17 shouldn't be given any deference. And just another, another argument of the government. And that's, and I think I've said everything else in the brief on that. I'll save a little time for, if I have any rebuttal, Your Honor. Okay, certainly. Mr. Gerda, again. May it please the Court. Good morning again, Your Honors. I'm Patrick Gerda on behalf of the Commissioner of Internal Revenue. Rev, rev proc 99-17 was a valid exercise of the authority Congress expressly granted in the legislative history. Does that make any difference to you? To tell you the truth. I mean, I know it makes a difference to you. But I mean, does it make any difference to you in this case? In this case, it just affirms Your Honor's, Your Honor's feeling, which was that the rev proc is entitled deference and that here the rev proc had to be respected. As, as you said, there has to be some sort of election. And the rev proc, based on what Congress asked the Commissioner to do, provided the rules for the election. The election here wasn't much of an election at all, as, as you correctly said. But I think that it is important to recognize that there is deference in this case to a revenue procedure that has been promulgated pursuant to a direct congressional directive to do so. So I think that even though you're right that the election itself was invalid and even if you gave the rev proc no deference, then the election still would fall short. I think it's, it's helpful to remember, as, as this Court did in Tualatin Valley, that this revenue procedure is entitled to deference because of the express authority as well as the fact that the, the Commissioner is entrusted with administering the revenue code and the, the specific, or the, the more general authority to prescribe rules and regulations under 26 U.S.C. 7805. Unless there are any more questions on that point, I'll briefly turn to the so-called consistency issue in which the task force did not abuse its discretion by, by denying the motion to compel interrogatories and by quashing the subpoena on Mr. Kopp, because as you pointed out, Judge Reimer, these are individualized determinations.  26 U.S.C. 66-2A imposes a penalty automatically if a taxpayer fails to meet certain criteria. In this, in this case, it was an understatement of the tax liability. So this is, this is a mechanical calculation. And where the individual nature of these inquiries come in is when a taxpayer has to show that they had reasonable cause and good faith, the exception of 26 U.S.C. 66-64. To avoid these penalties. And here, the, it's pretty clear that that's a, that's an individualized determination, and the information being sought would have absolutely no relevance to that determination. So as the, the relevance is lacking, and the fact that it is a burdensome request, if you care to look at it, excerpts of record 33 to 34, these are very broad, encompassing basically anyone who's wearing a red tie, but this time the red tie is anyone who's a client of Mr. Borelli. So these, this, this would be a burdensome undertaking for the IRS, and I do believe that it would involve 6103 disclosures. So because of these reasons, because of the lack of the relevance, because of the burdensome nature, and because of the possibility of prohibited disclosures, we think that the tax court did not abuse its discretion on this point. So unless there are any further questions, I'll relinquish.   Thank you. MR. GARRETT.  MS. GOTTLIEB. Mr. Morris, anything further? MR. MORRIS. Your Honor, I don't have much further to state, except I, again, I want to emphasize that the government raises a relevancy issue. Again, I refer that the Hartman case, I'll forward it to the Court, and the fact that you can't discriminate against a group of taxpayers in the same situation unless you have a substantial reason. Any questions of the Court? I think that's it. MS. GOTTLIEB. All right. Thank you, counsel, both of you. The matter just argued will be submitted.
judges: Fletcher, Rymer, Duffy